ROBERT A. PRINGLE AND OTHERS *vs.* BELA SIZER AND OTHERS.

A principal may secure his sureties against loss ׀ y a confession of judgment,
and the mere fact that actions, by some of his creditors, are pending
against him at the time, is not proof of fraud.
Where such a confession is given to indemnify the sureties against their lia-
bility on certain determinate and specified securities, the plaintiffs can hold
the judgment as indemnity against their liability on those securities only.
If there should be a surplus after satisfying those securities, they will not
be allowed, as against junior judgment creditors, to apply such surplus to
other securities on which they were liable at the time as sureties, but
which were not mentioned as among those to secure which the judgment
was given.
Where the plaintiffs in such a judgment bid off, at Sheriff's sale, the debtor's
property to an amount exceeding the sum of their liability on the securities
to protect which the confession was given, and satisfied their bid by giving
to the Sheriff a receipt on their execution for the amount of the bid: *Held,'*
That they were liable to account to junior judgment creditors of the prin-
cipal debtor for the surplus of their bid, after satisfying the securities, and
that, for such surplus the junior judgment creditors had a lien on the prop-
erty purchased by them.
At the common law a suit, when abated, is absolutely dead, but in equity an
abatement signifies only a present suspension of all proceedings in the suit
from the want of proper parties capable of proceeding therein.

BEFORE THOMAS, J., AT LANCASTER, OCTOBER TERM, 1869.

This was a creditors' bill exhibited by Robert A. Pringle and
Otis J. Chafee, (the last named styling himself as "being a partner
in, and representing herein, the late mercantile firm of Chafee, St.
Amand & Croft,") plaintiffs, against Bela Sizer, Robert C. Potts,
Samuel B. Massey, Benjamin A. Culp and Judson A. Hasseltine, and
George W. Williams, Benjamin J. Cureton and Charlotte R. Cure-
ton, executors and executrix of William J. Cureton, deceased, de-
fendants, and its object was to obtain a decree setting aside a judg-
ment confessed by Sizer to his co-defendants, Potts, Massey, Culp
and Hasseltine, and the decedent, Cureton, or, failing in that, to
compel the defendants to account for certain purchases at Sheriff's
sale of property of the defendant, Sizer.

It appeared from the pleadings and the evidence that, on the
27th September, 1858, the defendant, Sizer, gave to the said Potts,
Massey, Culp and Hasseltine, and the testator, William J. Cureton,
his, the said Sizer's bond, in the penal sum of $8,863.33, with a con-
dition thereunder written, that if he, the party obliged, should pay,
or cause to be paid, certain specified and described bonds and notes
by which he, the party obliged, was indebted as principal, and on
each of which at least one of the obligees above named was in-
debted as his surety, and should save, harmless and indemnified, the

said obligees against their liability as his sureties on said bonds and notes, then the above obligation to be void, &c.; and that, on the same day, he gave them a confession of judgment on the said bond, "according to the intent and meaning" thereof, and that judgment was duly entered on said confession and *fi. fa.* issued thereon, and lodged with the Sheriff, all on the same day.

That on the 28th September, 1858, James H. Witherspoon recovered and entered up two judgments against Sizer, in the aggregate sum of $541.95, besides costs; that on the 28th October, of the same year, Chafee, St. Amand and Croft, entered judgment and issued execution against him in the sum of $188.46, besides costs, and on the same day, E. D. Williams, Hyatt, McBurney & Co. and James E. Cureton, severally, entered judgments and issued executions against him. That, on the 28th March, 1859, Robert A. Pringle also entered judgment and issued execution against him, and that, on the day last named, several other judgments were entered against him.

In January, 1859, the Sheriff of Lancaster District levied the execution of Hyatt, McBurney & Co. on two tracts of land, five slaves, and some horses, cattle, wagons, &c., being all the property Sizer owned, and advertised the land and slaves for sale at the Court House, on the 7th day of February, then next, and the horses, cattle, wagons, &c., for sale the day after, at the residence of Sizer.

The plaintiffs, in the execution of Potts and others, agreed to bid on the property, and, if necessary, to purchase the same for their joint benefit, and appointed Potts to do the bidding. He accordingly attended at the Court House on the 7th February and bid off the tracts of land and the slaves. On the same day, the plaintiffs in the execution of Potts and others, and James H. Witherspoon, who held the executions next in order, drew up and executed an instrument, under seal, whereby, after reciting the judgments and executions of Potts and others, Witherspoon and James E. Cureton, against Sizer, and the purchases that day made by Potts at Sheriff's sale, they ratified the acts of Potts in the purchase of the lands and slaves, authorized him to attend the sale on the next day and purchase any property that should not bring a fair price, and further agreed that Potts should take titles in his own name to all the property purchased by him, take possession thereof and sell the same, and apply the proceeds of the sale to the execution of Potts and others against Sizer to "the extent they" (the plaintiffs therein)

"may be damnified as sureties for said Sizer, and to the extent they are secured by said judgment and *fi. fa.* founded thereon," and if any surplus should remain to apply such surplus to the executions in favor of James H. Witherspoon, and the balance, if any, to the execution in favor of James E. Cureton.

Potts attended the sale on the 8th February and purchased all the property offered for sale. His purchases, on both days, amounted to $8,457.12, and he satisfied his bids by giving the Sheriff a receipt on his execution for that amount, less the costs, which he paid.

The case was referred to a Referee to take testimony and report upon the facts. He submitted a report, as follows:

" In compliance with the order of Court, in the above case, the Referee respectfully reports that he has taken testimony, at the instance of the parties and their counsel, on the various points made in the pleadings, and submits the following as the result of his investigation:

" On the 27th of September, 1858, the date of the confession sought to be vacated by the complainants, the Referee finds that Bela Sizer was largely indebted, by numerous bonds and notes, on which the persons secured by the said confession, or some of them, were liable as sureties for the said Sizer. The debts for which his said sureties were so liable are embraced in the writing obligatory upon which the confession was based, and which is exhibited in the bill of complaint; and, also, three of the said sureties were liable as surety for the said Sizer on three or four other bonds not embraced in said writing obligatory.

" The surety liabilities not embraced in the paper above described, as developed by the testimony, at the date of the confession of judgment, were as follows, viz: An administration bond of Bela Sizer, administrator of A. A. Gillespie's estate in the penal sum of about twenty five hundred dollars; and an administration bond of the said Sizer, administrator of Wm. J. Gillespie, deceased, in the penal sum of about six thousand dollars; and, also, two guardianship bonds for the children of A. A. Gillespie, deceased—each bond in the penal sum of three thousand dollars.

" It appears that the estates of the two Gillespies (A. A. & Wm. J.) were both in an unsettled state at that time, and that R. C. Potts, out of the sales of Sizer's property, and the rents and profits thereof, paid debts, to a very considerable amount, which were outstanding against both their estates. The Referee is entirely satisfied that, at the date of the confession of judgment, Bela Sizer was

indebted in actual liabilities, for which his said sureties were then liable as surety for him, in an aggregate sum equal to, if not greater, than the amount of said confession. And in all the circumstances of the case, and the facts deposed to by the witnesses, the Referee has been unable to detect fraud in the said confession of judgment, but, on the contrary, believes the same to be a *bona fide* transaction.

"The Referee further reports that the levy and sale were made by virtue of an execution against the said Sizer, in favor of Hyatt, McBurney & Co., the *bona fides* of which is not questioned in this Court. The sale was a fair, open and public one; and, from the testimony, the property brought fair prices. It appears that the property was bid off by R. C. Potts, by arrangement between the sureties aforesaid and James H. Witherspoon, a junior execution creditor, entered into in writing on the evening of the first day's sale. Bela Sizer does not appear to have been a party to this agreement in writing. The property, or a portion of the same, was rented and hired out by R. C. Potts, after the purchase by him, to Anson Sizer, a son of Bela Sizer, for which he gave his obligation yearly, and paid the money for the same. Some two or three of the obligations have been produced in evidence which corroborates the testimony of the witnesses. It also appears that Bela Sizer lived on the place with his son, Anson Sizer. The Referee calls attention to the agreement in writing, made on the day of the sale, as showing the authority conferred on R. C. Potts.

"The circumstances relied on by the complainants to show fraud are, that the sureties, as complainants allege, were not liable to the full extent of the confession of judgment; that a large amount of the property, after the sale by the Sheriff, remained in the possession of Bela Sizer; and that the written agreement shows some advantage intended for Bela Sizer. But, according to the judgment of the Referee, it was incumbent on the complainants to make proof of the actual existence of these facts, and that they could not be presumed. And, if the testimony be true, the opposite is true.

"The Referee shows that Exhibit A, which forms a part of this report, shows the aggregate amount of the numerous bonds and notes of Bela Sizer, upon which his sureties were liable as such. In this the penal amount of the bonds are given.

"Exhibit B of this report shows the actual liabilities of the sureties at the date of the confession, as gleaned from the testimony.

"Exhibit C of this report shows the surety liabilities still unpaid,

as appears from the testimony. All of which, with the testimony taken on the reference, is respectfully submitted."

It is not deemed necessary to report the Exhibits, nor the evidence, documentary and oral, which accompanied the report of the Referee; and it is sufficient to state that the exhibits and evidence showed that the aggregate amount of Potts' purchases at the Sheriff's sales exceeded, by about $792, the amount for which the plaintiffs, in the judgment of Potts and others against Sizer, were liable at the time of the sales on the bonds and notes specified in the bond on which the confession to said plaintiffs was based; that the judgments in favor of James H. Witherspoon amounted, at the time of the sales, to $586.15, and, therefore, that there remained a small balance of about $206, arising from the sales of Sizer's property, which was applicable to the executions next in order to Witherspoon's, unless Potts and his co-plaintiffs could maintain the position taken by them, and sustained by the Referee, that they had the right to apply that balance to debts of Sizer not specified in the bond on which the confession was based, for which they were liable as his sureties.

Various exceptions were taken by the plaintiffs, and one by the defendants, to the report. It is not necessary that they should be stated.

His Honor the presiding Judge held, that the judgments against Sizer which were recovered before March, 1859, had been paid; that the plaintiffs had failed to show fraud in the confession of judgment; and that the plaintiffs in said judgment had the right, as against creditors of Sizer, whose judgments were recovered after the sales of his property, to apply the surplus arising from said sales, after satisfying the amount due on their own judgment, to any demands against Sizer for which they were liable, as his sureties, and he ordered that the bill be dismissed.

The plaintiffs appealed, and now moved this Court to reverse the decree of His Honor, on the following grounds:

1. Because, it is respectfully submitted, His Honor erred in not setting aside the confession of judgment made by Bela Sizer to his co-defendants for fraud.

2. Because, inasmuch as the defendants took possession of the property bid off by them at the Sheriff's sale, upon the trusts expressed in the deed, dated February 7th, 1859, copied in the testimony, His Honor erred in holding that liens of the judgments and executions subsequently obtained could not bind that portion of said prop-

erty which still remained unsold in their hands; and that they might apply the excess of the sales money, after discharging the surety obligations embraced in the confession, to the payment of other debts of the said Bela Sizer not in judgment and not mentioned in said deed.

3. Because, in point of fact, as shown both by the pleadings and testimony, the judgment of Chafee, St. Amand & Croft in the bill had been obtained, and the execution thereon lodged with the Sheriff previous to said sale; and for this reason, and because this is a creditor's bill, even according to the principles of the decree, His Honor erred in dismissing the bill..

4. Because, inasmuch as the answer of the defendants and the testimony in the cause show that after all the surety liabilities on account of the said Bela Sizer, embracing even those outside of the confession of judgment, had been paid off and discharged out of the avails of the property bid off at the Sheriff's sale, there still remained unsold and unapplied, in the hands of the defendants, of said property, the two tracts of land described in the proceedings and testimony, and a very large portion of the personal property; and, it is respectfully submitted, His Honor erred in not decreeing a sale of said property, and an application of the proceeds to the payment of the debts of the said Bela Sizer, according to their legal priorities.

5. Because of other errors in fact and in law contained in said decree.

*Moore,* for appellant.
*Allison,* contra.

June 29, 1870. The opinion of the Court was delivered by

Moses, C. J. We concur in the conclusion of both the Chancellor and the Referee, that there was no actual fraud in the confession of judgment by the defendant, Sizer, to his sureties. Neither is any to be implied from the transaction between them, which preceded or followed the sale.

There was an existing liability, on the part of the defendants, for their co-defendant, Sizer, to a large amount, and in the course which they pursued to protect themselves from a loss more than probable, from his then pecuniary condition, they do not appear to have violated any of those salutary principles which Courts of Equity enforce to secure fair and honest dealing in the business

affairs of life. When they are transgressed, a firm disposition to repair the wrong is always exhibited by the Courts; but fraud is not to be presumed; it must be shown by circumstances so strong as to lead to conviction, and the burden of proof is upon those who seek the aid and interposition of judicial tribunals to set aside and vacate instruments under which legal preferences have been obtained.

A judgment confessed as an indemnity for liabilities incurred by another, as indorser, or security, is good.—*Ford* vs. *Elkins*, 2 Speer, 147.

The fact that it was given after suits by other creditors had been brought, of itself constituted no fraud. A debtor has a right to prefer one creditor to another, but it must be a preference which secures no benefit or advantage to himself, as the price or consideration, or reserves to himself an interest, to which, of right, his other creditors may be entitled.

If Sizer had remained in possession after the sale, the principle laid down in *Smith* vs. *Henry*, 1 Hill, 16, would not have been a circumstance from which fraud in the original transaction could have been inferred, for it has been held not to apply to the property of a debtor acquired through a Sheriff's sale.—*Pringle* vs. *Rhame*, 10 Rich., 72; *Guignard* vs. *Aldrich, et al.*, 10 Rich. Eq., 253.

Here, too, the proof is clear, that the possession was in the son, Anson Sizer, under a *bona fide* contract of renting and hiring from year to year.

The judgment confessed was for $8,863.38. It was founded on a bond in that amount, which recited liabilities on the part of the plaintiffs to whom it was confessed, supposed to be at least equal to the sum expressed, and set out with such reference to them that there could be no misapprehension of the debts, as against which the purpose was to protect the obligees.

All the real and personal estate of Sizer was levied on under an execution junior to the confession, and sold by the Sheriff of Lancaster on sale days in February, 1859. The property brought fair prices, and was purchased by 'Potts, one of the plaintiffs, (in the confession,) under an arrangement with his co-plaintiffs to attend the sale, make the property bring its value, and, if necessary to that end, to purchase it. To this understanding there was no evidence that Sizer was a party.

The real estate and some slaves were sold on the first day, whereupon a written agreement was entered into between Potts and the

5A

other sureties, (the defendants here,) together with J. H. Witherspoon, who held the judgments next in rank, ratifying the purchase, acknowledging the land and negroes so bought to be for the joint benefit of the sureties, and that he (Potts) should hold possession, sell the same, and apply the proceeds to the satisfaction of their *fi. fa.* to the extent necessary for their indemnity as sureties for the said Sizer, as secured by the said judgment, continuing the agency of Potts as to the farther sales to be made the next day, as to the property he might then buy, with the stipulation that, after satisfying their execution, any balance should be applied to the execution of the said J. H. Witherspoon, and the remainder to that of J. E. Cureton.

The amount of all the purchases so made by Potts was $8,457.12, which he paid, (except as to the costs,) by giving a receipt to the Sheriff for the sum on the said execution which he and the other sureties held against Sizer, which was senior in date to all which existed against him. If the liabilities covered by the bond reached that amount, then the said purchasers would be the owners of the property so bought at the Sheriff's sale, with no duty to perform except the discharge of the trust which devolved on them through the bond, in favor of the creditors whose debts were referred to in it as those on which the obligees were sureties, and as to which they were to be protected by the judgment, on the same day confessed.

It is alleged, however, by the counsel for the appellants, in the statement which he submitted in his argument, that the liability of the sureties on the bonds and notes intended to be covered by the confession, at the time of the sale, amounted only to $7,664.33, and that may be accepted as the correct sum, as it is, by $238.95, in excess of the amount stated by the Circuit Judge in his decree as the payments then actually made.

Potts and his co-plaintiffs, however, received from the proceeds of the sales on their execution $8,457.12, and if their liabilities for Sizer, on the debts which the confession was to protect, was only $7,664.33, then they have received $792.79, which, after first paying the judgments of J. H. Witherspoon, amounting on day of sale to $586.15, leaves $206.64 in their hands. This sum they hold through the property which they purchased and paid for by giving a credit on their execution. It is applicable, however, to the other judgments, in their order of priority, unless Potts and the plaintiffs in the confession can maintain their right to it, on the ground which they assume, and which was sustained by the Circuit Judge.

They contend that, as the purpose of the parties interested in the bond was, through it, to secure the obligees against all liabilities on behalf of Sizer, the debts on which they are responsible for him, though omitted in the instrument, are to be regarded as impliedly included.

The very specification and recital of the liabilities against which the sureties were to be protected excluded those which are not by name included in it. The parties themselves have stated, in precise language and terms, the end designed and contemplated by the bond. In addition to this, there is an endorsement on the confession that it is made "to the intent and meaning of the within writing obligatory." It was competent, by the use of more general terms, to have availed themselves of a more enlarged benefit through the bond and the confession, by extending it to all debts for which they might be in any way responsible for the said Sizer. How can they, however, without any allegation of mistake, be permitted, in fact, to change the terms of a sealed instrument, specifically enumerating certain demands, so as to comprehend others which are not referred to, when, too, it is to be assumed that they had knowledge of all the debts on which they were sureties for the said principal? A more legitimate inference is, that, not inserting, they intended to exclude them; and this receives support from the concluding words of their answer : " The confession of judgment aforesaid might have been for a larger amount than that for which it was given, and that, too, on actually incurred liabilities." •

It appears, then, that the plaintiffs in the confession have in the property which they so purchased the said sum of $206.64, which property was liable to the judgment creditors junior to Witherspoon, in the order of their date. This they are bound to pay; and if, by reason of their insolvency, they are not competent to do so, the land must stand liable to the amount, for they held it in trust for such judgment creditors, having used their funds to that amount in the purchase of it.

Pringle and Chafee are the only creditors before the Court. Pringle, however, has no claim to the $206.64, because that sum is absorbed by priorities.

Chafee, the other plaintiff, had died before the hearing on Circuit, and the fact is not noticed by the Circuit Judge in his decree.

His representatives, or the firm which (in the rather uncommon language of the bill) he represented, have an interest to the extent already stated, and it will be lost to them, if the general order dis-

missing it is confirmed.   The bill as to him abated before the hearing.

The effect of an abatement at law and in equity is materially different.   "In the sense of Courts of Equity, an abatement signifies only a present suspension of all proceedings in the suit from the want of proper parties capable of proceeding therein.   At the common law, a suit, when abated, is absolutely dead."—Story's Eq. Pl., § 354.

The order dismissing the bill as to Pringle is confirmed.   We do not think it a case for costs, and he should pay only his own, and it is so adjudged.   As to Chafee, let the case be remanded to the Circuit Court, that the parties representing him, or the firm, as they may be advised, may have the opportunity of becoming parties to it, and of moving for such orders as may place them in a condition to carry out the views and principles announced in this opinion.

*Willard,* A. J., and *Wright,* A. J., concurred.